UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

DAVID LEE SANDERS,               )
                                 )
          Petitioner,            )          Civil No. 03-455-ART
                                 )
v.                               )
                                 )          **MEMORANDUM OPINION**
RANDY WHITE, *Warden*,           )          **AND ORDER**
                                 )
          Respondent.            )

\*\*\*  \*\*\*  \*\*\*  \*\*\*

On February 18, 2015, the Court denied David Lee Sanders' petition for a writ of habeas corpus under 28 U.S.C. § 2254.  *See* R. 113.  Sanders has since filed a motion to reconsider.  *See generally* R. 115.  Specifically, Sanders asks the Court to revisit the following issues:  (1) whether the treatment of claims related to the trial court's failure to hold competency hearings (Claim 10.7 and Claim 22.6) was inconsistent; (2) whether Sanders' trial counsel rendered ineffective assistance by failing to present an adequate mitigation case (Claim 27(I)); (3) whether Sanders' trial counsel was ineffective for failing to discover a psychiatric report (Claim 27(B)); and (4) whether Sanders' counsel provided ineffective assistance by failing to produce a video taken of Sanders after his arrest (Claim 27(E)).  *Id.*  In support, Sanders identifies recent cases in the dynamic field of habeas law. *See id.* at 21–34 (citing to cases not mentioned in Sanders' habeas petition or reply memorandum in support of his habeas petition).  In light of the new authority, justice requires the Court to reconsider its decision as to Claim 27(I).

## BACKGROUND

The Court has previously summarized the facts of this case. *See* R. 113 at 2–6. The essential details related to the claims at issue in this order are as follows. On January 28, 1987, Sanders shot and killed the proprietor and a customer of a convenience store in Madison County, Kentucky, and took money from behind the counter. When police initially questioned him about his activities on that day, Sanders admitted to driving to Madison County but maintained that he did not kill anyone. On February 2, 1987, the police transported Sanders to the local jail. There, Sanders manifested troubling behaviors: he repeatedly hit his head against the cell wall and stated that he wanted to kill himself. Sanders' appointed counsel, Ernie Lewis, videotaped Sanders' bizarre actions. In his next interview with the police—on February 3, 1987—Sanders admitted to the murders. He explained that, during the murders, he could see himself shooting the men and was unable to stop himself.

Soon after Sanders confessed to the shootings, a grand jury indicted him on two charges of capital murder and two charges of first-degree robbery. Sanders' retained counsel, Kevin Charters, moved to evaluate Sanders' mental health and psychiatric condition. The trial court ordered the Kentucky Correctional Psychiatric Center ("KCPC") to evaluate Sanders. As part of the evaluation, the trial court directed the KCPC to determine whether Sanders was competent to stand trial and whether he was insane at the time he committed the shootings. The KCPC conducted a series of tests and examinations over six weeks, employing multiple psychiatrists. The lead KCPC investigator, Dr. Candace Walker, summarized the team's collective findings in a report. The KCPC report concluded that, though Sanders may suffer from a mixed personality disorder, he was competent to stand

2

trial and did not suffer from a mental condition that compromised his capacity to conform his behavior to the law.  But the report did not mention the findings of one KCPC psychologist, Dr. Frank Flenning, whose findings were inconsistent with those from the other KCPC team members.  In his individual report, Dr. Flenning had documented the physical abuse that Sanders experienced throughout his childhood at the hands of his parents.  Dr. Flenning also concluded that Sanders experienced dissociative states, suffered from a fragmented personality, and had the potential for "brief psychotic episodes wherein he would experience a loss of contact with reality."

After his KCPC evaluation, Sanders went to trial, where he presented an insanity defense.  At the conclusion of a week-long proceeding, the jury convicted Sanders of both murder counts and both robbery counts.  After a weekend recess, the trial court conducted the penalty phase of the trial.  Charters introduced mitigation testimony from the assistant principal of Sanders' former school, Sanders' neighbor, his boss, and his sister.  After hearing this testimony, the jury deliberated and sentenced Sanders to death.

Sanders appealed the decision, but the Kentucky Supreme Court upheld the verdict. *See Sanders v. Commonwealth*, 801 S.W.2d 665 (Ky. 1990) (*Sanders I*).  He then filed a motion for post-conviction relief under Kentucky Rule of Criminal Procedure ("RCr") 11.42.  That, too, was denied.  *See Sanders v. Commonwealth*, 89 S.W.3d 380 (Ky. 2002) (*Sanders II*).  Sanders filed a petition for a writ of habeas corpus in this Court.  Soon afterward, he obtained leave to present additional unexhausted claims to the state court.  R. 32.  The Kentucky Supreme Court again completely denied relief, determining that Sanders could have presented his latest batch of claims in his prior appeals.  *See Sanders v. Commonwealth*, 339 S.W.3d 427 (Ky. 2011) (*Sanders III*).  After his third and final trip to the Kentucky

courts, Sanders withdrew some claims from his federal habeas petition.  When this Court denied relief on his amended petition, Sanders filed the present motion for reconsideration under Federal Rule of Civil Procedure 59.

## DISCUSSION

Sanders may move to alter or amend the Court's judgment under Rule 59(e) based on previously unavailable evidence or an intervening change in controlling law.  *See GenCorp. Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999); *see also McDowell v. Calderon*, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999).  The Court may also grant a Rule 59(e) motion in order to prevent manifest injustice.  *See Besser v. Sepanak*, 478 F. App'x 1001 (6th Cir. 2012) (per curiam) (citing *GenCorp.*, 178 F.3d at 834).  But Sanders may not use his Rule 59(e) motion as a vehicle for re-arguing the case.  *See Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) ("[P]arties should not use [Rule 59(e) motions] to raise arguments which could, and should, have been made before judgment issued.").

Sanders does not satisfy the Rule 59(e) standard to overturn the Court's judgment on four of the five disputed claims.  Sanders does, however, present new authority that supports reconsidering Claim 27(I).  The new authority reflects recent developments in the law following the Supreme Court's decisions in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), and *Trevino v. Thaler*, 133 S. Ct. 1911 (2013).  In light of these changes, the Court must revisit its previous decision.

I.      **Sanders does not meet the Rule 59(e) standard for vacating the Court's judgment as to Claims 10.7, 22.6, 27(B), and 27(E).**

Sanders asks the Court to clarify its ruling on two claims related to the trial court's failure to order competency hearings. *See* R. 115 at 1–2 (identifying Claim 10.7 and Claim 22.6). He argues that the Court both decided that the claims were procedurally defaulted and resolved on the merits in the Kentucky courts. *Id.* This, he notes, is not possible. Sanders does not present new evidence or law related to these claims, so the Court will not overturn its previous decision as to these issues. And to clarify, the Court determined that Sanders procedurally defaulted on both Claim 10.7 and Claim 22.6. *See* R. 113 at 12–13. Not only that, but Sanders *conceded* that he procedurally defaulted those claims. *See id.* (citing to R. 111 at 4–5). Sanders misquotes the opinion to conclude that the Court determined that these claims were resolved on the merits. He cites to pages describing how the Kentucky state courts reached the merits of different claims: that Sanders' *appellate counsel* was ineffective because he failed to challenge the lack of competency hearings before trial and sentencing. *See* R. 113 at 119–20.

Next, Sanders objects to the Court's decision on Claim 27(B)—that his counsel failed to obtain Dr. Flenning's psychiatric report. *See* R. 115 at 34–38. But Sanders merely rehashes arguments that he could have raised—and that he did raise—in his initial habeas petition. *Compare* R. 115 at 35–37 (arguing in his Rule 59 motion that Charters' conduct was "materially indistinguishable from what the Supreme Court found unreasonable in" *Wiggins v. Smith*, 539 U.S. 510 (2003)), *with* R. 73 at 312 (citing to *Wiggins* and other cases for the proposition that a "legion" of courts have found that the failure to present mitigation evidence amounted to ineffective assistance of counsel). For the same reasons articulated in

the previous opinion, those arguments do not satisfy Sanders' burden to show that the Kentucky Supreme Court's decision was unreasonable.  *See* R. 113 at 89–90.  Because Sanders does not offer any previously unavailable new law and does not demonstrate a clear error of law in the Court's decision, the Court will not reconsider Claim 27(B).

Finally, Sanders contends that the Court "should have reviewed [Claim 27(E)] on the merits"—without any deference to the Kentucky Supreme Court.  *See* R. 115 at 39.  While Sanders' briefing is unclear, he appears to argue that the Court should have reviewed the claim *de novo* because he complied with Kentucky's procedural rules.  *See id.*  But, as the Court previously held, the Kentucky Supreme Court properly resolved Claim 27(E) on the merits.  *See* R. 113 at 90–93 (applying deference to the state court's merits determination); *Sanders II*, 89 S.W.3d at 390 (concluding that "there is nothing to complain about related to ineffective assistance").  As a result, the Court may grant relief only if that decision was unreasonable.  *See* 28 U.S.C. § 2254(d).  Once again, however, Sanders' arguments do not rest on any new law or facts suggesting that the Kentucky Supreme Court's decision was unreasonable.  Nor does Sanders establish any clear error requiring reconsideration.  So Sanders' Rule 59(e) motion as to Claim 27(E) fails.

Sanders also asks the Court to consider new *arguments* for granting relief on Claim 27(E).  *See* R. 115 at 39 (arguing that Sanders should receive an evidentiary hearing because the state decision was based on a "materially incomplete record").  But Sanders may not use his Rule 59(e) motion as a vehicle to raise new arguments.  *See Sault Ste. Marie Tribe of Chippewa Indians*, 146 F.3d at 374.  Because Sanders could have raised this argument in his

habeas petition or reply—but elected not to do so—he may not use a Rule 59 motion to raise them now.[1]

## II.    Sanders points to recent case law signaling changes in habeas jurisprudence that support reconsideration of Claim 27(I).

Claim 27(I) concerns the failure of Sanders' trial counsel to prepare and present appropriate mitigation evidence during the penalty phase of the trial.  Sanders objects to the Court's resolution of Claim 27(I) on two broad grounds:  the procedural default analysis and the alleged resolution of the merits.  *See generally* R. 115 at 2–34.  Before delving directly into the substance of Sanders' arguments, it is helpful to briefly review four issues related to Claim 27(I):  (1) the factual background, (2) the Kentucky Supreme Court's decision, (3) Sanders' federal habeas petition and reply brief, and (4) this Court's previous decision.

The relevant factual background is short.  Sanders' trial attorney, Charters, presented a total of ten minutes of mitigation testimony from four witnesses during the penalty phase of Sanders' trial.  None of the witnesses spoke about the physical and emotional abuse that Sanders claims he suffered at the hands of his parents throughout his childhood.  Nor did any of the witnesses testify about Sanders' previous head injuries.  In the RCr 11.42 motion, Sanders' post-conviction counsel claimed that Charters' failure to develop robust mitigation evidence amounted to ineffective assistance of counsel.  *See* Motion to Vacate, Set Aside, or Correct Sentence Pursuant to RCr 11.42 at 50–52, Madison Circuit Court, No. 87-CR-018 (Feb. 9, 1993), Appellate Proceedings at 550–52; *see id.* at 551 (arguing only that "Charters

---

[1] Attorneys face a persistent conundrum:  how to preserve all colorable issues without obscuring strong claims in a heap of weaker claims.  One strategy involves focusing the weight of a brief—and, consequently, the court's attention—on developing the meritorious issues and then dedicating only a short statement to preserving the remaining issues.  In Sanders' petition (which totaled over 300 pages), such an approach would have allowed both the Court and the parties to efficiently devote their resources to resolving the most deserving claims.

never interviewed key family members . . . who could have provided information and testimony relevant as mitigation, including corroborated David['s] statements of physical abuse").

The Madison Circuit Court rejected the claim (among others), and Sanders appealed to the Kentucky Supreme Court.  *See* Order Denying Motion to Vacate Pursuant to RCr 11.42 at 11–12, Madison Circuit Court, No. 87-CR-018 (Jan. 28, 1999), Appellate Proceedings at 417–18.  The Kentucky Supreme Court did not grant relief or an evidentiary hearing on Claim 27(I) because Sanders failed to describe the testimony that the witnesses would have offered.  *Sanders II*, 89 S.W.3d at 390.  As a result, Sanders' allegations did "not rise to the standards required by RCr 11.42(2)," and "summary dismissal" was appropriate. *Id.*; *see also* RCr 11.42(2) ("The motion shall be signed and verified by the movant and shall state specifically the grounds on which the sentence is being challenged and the facts on which the movant relies in support of such grounds.  Failure to comply with this section shall warrant a summary dismissal of the motion.").

In his federal habeas petition, Sanders detailed the mitigation evidence that Charters could have discovered and introduced at trial.  *See* R. 73 at 287–92.  Sanders also discussed clearly established Supreme Court precedent governing ineffective-assistance-of-counsel claims related to presenting mitigation evidence.  *See id.* at 294–300.  Sanders contended that the Court may grant relief because the *Sanders II* court adjudicated Claim 27(I) based on an unreasonable application of clearly established law and an unreasonable determination of the facts.  *Id.* at 315–18.  As a secondary argument, Sanders suggested that the Kentucky Supreme Court may have denied Claim 27(I) based on a procedural rule, but that such a determination was improper.  *See id.* at 319.  Sanders developed his procedural default

8

argument in greater detail in his reply brief.  There, he argued first that the *Sanders II* court did not clearly rest its decision on a procedural rule.  R. 96 at 156.  And even if it did, he claimed, the court's determination was incorrect because he followed all procedural rules. *Id.*  Finally, Sanders argued that, even if he did procedurally default on Claim 27(I), the default could be excused because it was due to the ineffective assistance of his post-conviction counsel.  *See* R. 96 at 158–59.  But Sanders did not cite any cases explaining why post-conviction counsel's ineffective performance would excuse procedural default of Claim 27(I) in that section of his brief.

This Court found that the *Sanders II* court unambiguously relied on a state procedural pleading rule to resolve Claim 27(I).  *See* R. 113 at 108–09.  And Sanders did not make an adequate showing of why he could overcome that procedural default.  *See id.* at 110 (explaining that Sanders had the responsibility "to show, among other things, that the 'state procedural framework . . . makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim for ineffective assistance of trial counsel on direct appeal'" (quoting *Trevino v. Thaler*, 133 S. Ct. 1911, 1921 (2013))).  In addition to its holding on Claim 27(I), the Court mentioned that it would not be able to completely decide Claim 27(I) even if Sanders had met the requirements for procedural default.  *Id.*  Why? Because there was no evidence—such as affidavits—that would show what testimony any potential witnesses would have provided at the penalty phase.  *Id.* at 110–11.  The Court concluded that, absent such evidence, it would not be able to grant Sanders complete relief on Claim 27(I) at the current stage of the proceedings.  *Id.* at 111.

Now, in his motion for reconsideration, Sanders presents additional case law and arguments to further defend against procedural default.  Specifically, Sanders sets forth three

claims:  (1) that he did not procedurally default on Claim 27(I) because he sufficiently pled his RCr 11.42 motion; (2) that the Kentucky Supreme Court could not find that he procedurally defaulted because the RCr 11.42(2) pleading rule was not "firmly established" or "regularly followed"; and (3) that, even if he did procedurally default, he pled sufficient facts that would necessitate a hearing on whether the default could be excused.  *See* R. 115 at 3–34.

The Court will not address the first two arguments because they were—or could have been—raised in his habeas petition and reply.  *See* R. 96 at 156 (arguing that the *Sanders II* court erred in its decision because Sanders did not procedurally default as a matter of fact); *see also Sault Ste. Marie Tribe of Chippewa Indians*, 146 F.3d at 374.  Sanders introduces no intervening law and does not show a clear error of law, so the Court reiterates its original conclusion that the *Sanders II* court rightfully found that Sanders procedurally defaulted Claim 27(I) by failing to meet basic pleading standards pursuant to RCr 11.42(2).  R. 113 at 108–10; *see also Hodge v. Haeberlin*, 579 F.3d 627, 639 (6th Cir. 2009) ("Criminal Rule 11.42 is a regularly followed procedural rule that constitutes an adequate and independent ground for denying a claim.").

But Sanders' third claim—whether he can overcome that procedural default—is another matter.  In order to determine whether the Court can excuse Sanders' procedural default of his ineffective-assistance-of-trial-counsel claim, Sanders must demonstrate cause for and prejudice from his default.  *See Trevino*, 133 S. Ct. at 1917.  To establish cause, Sanders may rely on the ineffectiveness of his initial post-conviction counsel if he satisfies the four prongs of *Martinez–Trevino*:  (1) that the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) that his initial state collateral review counsel was

10

ineffective; (3) that the state collateral review proceeding was the "initial" review proceeding of the ineffective-assistance-of-trial-counsel-claim; and (4) that the state's procedural system "d[id] not offer most defendants a meaningful opportunity to present a claim of ineffective assistance of trial counsel on direct appeal" due to its "structure, design, and operation." *Id.* at 1918, 1921.

At this stage of the proceedings, Sanders must allege facts that, if proven, entitle him to relief by way of excusing procedural default. *See* Rule 6(a) of the Rules Governing Section 2254 cases ("Habeas Rules") (stating that a judge may, for good cause, authorize a habeas petitioner to conduct discovery under the Federal Rules of Civil Procedure); *see also Lynott v. Story*, 929 F.2d 228, 232 (6th Cir. 1991) (explaining that habeas petitioner may conduct discovery "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate" that he is entitled to relief (internal quotation marks omitted)).

Sanders does just that. He cites to new cases to support his claim that any procedural default of Claim 27(I) should be excused because of ineffective assistance of post-conviction counsel. *See* R. 115 at 21–33. Some cases were decided after Sanders filed his initial habeas petition, and others were published after he filed his reply brief. In light of this case law, Sanders' previously alleged facts constitute good cause. Because justice requires accounting for these developments in the law, Sanders should proceed to fact development to determine whether he can prevail on this argument.

## A.   Sanders has sufficiently pled that Claim 27(I) is a "substantial" claim.

A "substantial" claim is one that is "debatable amongst jurists of reason." *See Martinez*, 132 S. Ct. at 1318 (explaining that the claim must have "some merit," and citing

*Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003), which used the "debatable amongst jurists of reason" standard).  To demonstrate that Claim 27(I) is "substantial," Sanders must show that reasonable jurists could debate whether his trial counsel's performance was: (1) objectively unreasonable under prevailing professional norms; and (2) prejudicial to the defense.  *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984).  Sanders satisfies both criteria.

Under *Strickland*'s first prong, reasonable jurists may disagree about whether Charters' performance was deficient.  *See Strickland*, 466 U.S. at 687–88.  According to Sanders, Charters did not investigate mitigation leads, presented only ten minutes of mitigation testimony, and did not present testimony about Sanders' childhood abuse.  *See* R. 73 at 283–92.  Sanders alleges that if Charters had followed up on "red flags," he would have discovered, among other facts, the following testimony of family members:  that Sanders' father was drunk and routinely beat Sanders, that his father tried to run Sanders over with a car, and that Sanders' mother also beat him to the point of unconsciousness.  *See* R. 73 at 290–91; *see also id.* at 282 (claiming that the evidence is of the exact variety that "garners the most sympathy in jurors and that routinely results in a sentence" other than death).  Reasonable jurists could find that Charters' failure to investigate and present that evidence constituted deficient performance.  *See, e.g.*, *Williams v. Taylor*, 529 U.S. 362, 396 (2000) (holding that counsel's failure to uncover and present voluminous mitigating evidence at sentencing could not be justified as a tactical decision because trial counsel "did not fulfill their obligation to conduct a thorough investigation of the defendant's background"); *Wiggins*, 539 U.S. at 524 (holding that a decision not to expand investigation of mitigation evidence did not meet the prevailing professional standards in the state); *Rompilla v. Beard*,

545 U.S. 374, 390–93 (2005) (concluding that failure to examine files containing mitigating evidence amounted to ineffective assistance that prejudiced the prisoner); *Cauthern v. Colson*, 736 F.3d 465, 485 (6th Cir. 2013) (discussing that an attorney's failure to investigate possible mitigation evidence in a capital case amounts to deficient performance); *Greer v. Mitchell*, 264 F.3d 663, 676–77 (6th Cir. 2001) (concluding that trial counsel's performance was deficient where it "appear[ed] that trial counsel did not begin preparing for the mitigation phase of the trial until after conviction"); *Glenn v. Tate*, 71 F.3d 1204, 1207 (6th Cir. 1995) (finding deficient performance where "the lawyers made virtually no attempt to prepare for the sentencing phase of the trial until after the jury returned its verdict of guilty").

Under *Strickland*'s second prong, reasonable jurists could also debate whether Sanders suffered prejudice from Charters' failure to present additional mitigation testimony. *See Strickland*, 466 U.S. at 693.  Reasonable jurists could conclude that there was at least a "reasonable probability" that a jury would have returned a different verdict after hearing about Sanders' repeated physical trauma and childhood abuse—abuse that included head injuries.  *Id.* at 694; *see Cauthern*, 736 F.3d at 486 ("[I]t is clearly established law that evidence of abuse is significant to a jury's determination of moral culpability.").

These detailed averments, when combined with the reasonable grounds for disagreement on the merits of an ineffective-assistance claim, demonstrate that Claim 27(I) is at least "substantial."  And through his specific allegations, Sanders establishes "good cause" for why he should proceed with evidentiary development on this prong of *Martinez–Trevino*. *See Bracy v. Gramley*, 520 U.S. 899, 908–09 (1997) (holding that a court should permit discovery where a petitioner makes specific allegations that, if proved, show reason to believe that he is entitled to relief).

13

**B.    Sanders' allegations that his post-conviction counsel was ineffective merit further evidentiary development.**

In his reply memorandum in support of his habeas petition, Sanders argues that the very fact that his initial review post-conviction counsel could not meet the basic pleading standard of RCr 11.42(2) demonstrates their ineffectiveness. *See* R. 96 at 159 ("Pleading with specificity is something that would have been easy for counsel to do. To the extent they failed to do so, that failure was an abdication of basic requirement of advocacy that amounts to deficient performance . . . ."). The Warden, however, disputes that Sanders' post-conviction counsel was ineffective. *See* R. 85 at 6. Faced with this conflict, the Court must determine whether Sanders made a showing of ineffective post-conviction counsel sufficient to warrant proceeding further with this argument. To do so, the Court must determine, among other things, whether post-conviction counsel's failure to comply with RCr 11.42(2) in pleading Claim 27(I) was in line with prevailing professional standards. *Cf. Clark v. Poole*, 440 F. Supp. 2d 235, 242 (W.D.N.Y. 2006) ("Although trial counsel's motion papers may have been inartfully drafted, they were not so plainly inadequate as to deprive [petitioner] of his Sixth Amendment right to counsel."); *Boyd v. Hawk*, 965 F. Supp. 443, 452 (S.D.N.Y. 1997) ("While counsel was sloppy [in drafting an omnibus discovery motion, petitioner] has failed to prove that counsel's performance fell below prevailing professional norms . . . .").

Given these conflicting allegations, and because Sanders' petition demonstrates that Claim 27(I) is potentially meritorious, the Court cannot dismiss this prong of the *Martinez–Trevino* test outright. Instead, Sanders' allegations of ineffective assistance justify additional evidentiary development. *See Bracy*, 520 U.S. at 908–09. To that end, as described below,

14

Sanders may conduct discovery, move to expand the record, and seek an evidentiary hearing to develop facts on this limited issue: whether post-conviction counsel rendered ineffective assistance in failing to adequately plead Claim 27(I) in Sanders' RCr 11.42 motion before the Kentucky courts.

Sanders suggests that the Court made two additional rulings to dismiss his allegations of ineffective assistance:  He hints that the Court may have found that Sanders failed to exhaust his claim of ineffective assistance of post-conviction counsel and so could not rely on that claim to excuse his procedural default.  *See* R. 115 at 25–27.  Sanders also argues that the Court found his ineffectiveness allegations meritless because he failed to attach supporting affidavits. *Id.* at 31–33.

But neither conclusion is consistent with the Court's prior opinion.  First, the Warden did not argue that Sanders had to exhaust his ineffective-assistance claim before that ineffective assistance could excuse his default of Claim 27(I).  *See generally* R. 85 at 5–7; 53–58.  And the Court did not raise exhaustion *sua sponte*, although it could have.  *See Day v. McDonough*, 547 U.S. 198, 206 (2006) (quoting *Granberry v. Greer*, 481 U.S. 129, 133 (1987)) (explaining that "federal appellate courts have discretion to consider a state prisoner's failure to exhaust available state remedies . . . despite the State's failure to interpose the exhaustion defense").  Regardless, it is not clear that Sanders needed to exhaust his ineffective-assistance-of-post-conviction-counsel claims in the state courts.  The *Martinez* Court, for example, did not find that the ineffective-assistance-of-post-conviction-counsel claim was barred for failure to exhaust, even though the petitioner first raised the claim in the federal habeas proceeding.  *See Martinez*, 132 S. Ct. at 1314–15.  And the only circuit court to confront this issue has found that exhaustion is not required.  *See Dickens v. Ryan*, 740

F.3d 1302, 1322 n.17 (9th Cir. 2014) ("[W]here *Martinez* applies, there seems to be no requirement that the claim of ineffective assistance of [post-conviction] counsel as cause for an ineffective-assistance-of-sentencing-counsel claim be presented to the state courts."); *see also Matthews v. Parker*, 651 F.3d 489, 499 (6th Cir. 2011), *reversed on other grounds by Parker v. Matthews*, 132 S. Ct. 2148 (2012) (holding that petitioner did not procedurally default ineffective-assistance-of-appellate-counsel claim where "[p]etitioner's habeas petition was his first opportunity to raise [the claim]").

This Court, however, stated otherwise when it declined to excuse Sanders' procedural default of another ineffective-assistance-of-trial-counsel claim on account of ineffective assistance of post-conviction counsel. *See* R. 113 at 14–17 (discussing the failure to exhaust the claim for ineffective assistance of post-conviction counsel as it related to Claim 10.8). But, at the time, the Court did not have the benefit of the Ninth Circuit decision in *Dickens*. *See GenCorp.*, 178 F.3d at 834 (concluding that, where the movant introduces a change in the law, courts may reconsider a decision under Rule 59(e)). And in any case, the Court did not rest its holding on the lack of excuse for Sanders' procedural default. *See* R. 113 at 17 (concluding that Claim 10.8 is not sufficiently "substantial" such that the procedural default could be excused by the ineffective assistance of post-conviction counsel). Accordingly, the prior opinion, R. 113, is modified to the extent that it required Sanders to exhaust his ineffective-assistance-of-post-conviction-counsel argument in order to excuse his procedural default of ineffective-assistance-of-trial-counsel claims. *Cf. GenCorp.*, 178 F.3d at 834 (permitting courts to grant motions under Rule 59(e) where the movant introduces a change in the law). However, the ultimate resolution of Claim 10.8 remains unchanged because the

previous opinion relied on additional grounds for why Sanders could not excuse the procedural default of that claim.

Sanders' second interpretation of the Court's prior opinion is also misguided. The Court did not require Sanders to attach affidavits to his habeas petition for the purpose of demonstrating why his ineffective-assistance-of-post-conviction-counsel claim could excuse the default of Claim 27(I). *See generally* R. 113 at 110. The Court noted, as an alternative ground, that it could not decide the merits of the claim without affidavits or other evidence needed to make a factual determination. *Id.* There is no law requiring habeas petitioners to set forth affidavits at the initial stages of the proceeding. Rather, factual development is necessary to move forward on the claim. *See, e.g.*, *Bracy*, 520 U.S. at 908–09 (holding that a court should permit discovery where a petitioner makes specific allegations that, if proved, show reason to believe that he is entitled to relief). So Sanders may proceed with discovery to obtain the affidavits and evidence the Court needs to resolve this question. *See infra*.[2]

**C.    The post-conviction proceeding was the initial review proceeding for Claim 27(I).**

Sanders claimed that his post-conviction proceeding was the initial review proceeding for his ineffective-assistance-of-trial-counsel claim. *See* R. 73 at 43–44. The Warden did not dispute this allegation. *See* R. 85 at 5–6 (Warden's response discussing *Martinez v. Ryan*); R. 96 at 55 (acknowledging that the Warden does not dispute that the RCr 11.42

---

[2] The Sixth Circuit's recent decision in *West v. Carpenter*, No. 13-6538, 2015 WL 3889437 (6th Cir. June 25, 2015), does not affect the analysis. *West* held that *Martinez–Trevino* does not apply where the petitioner, after raising his ineffective-assistance-of-trial-counsel claim in the state's initial post-conviction proceeding, did not appeal that claim to the state post-conviction appellate court. *Id.* at *5. The failure to appeal the claim in state post-conviction proceedings is an independent procedural default that cannot be excused through *Martinez–Trevino*'s gateway. Here, Sanders did appeal his RCr 11.42 claim regarding inadequate penalty preparation to the Kentucky Supreme Court. *See* Appellant's Brief at 95–102, *Sanders II*, 89 S.W.3d 380, Appellate Proceedings at 1255–62. Further, the Warden does not argue that Sanders' procedurally defaulted by failing to appeal his claim.

proceeding is the initial-review proceeding for Sanders' ineffective-assistance-of-trial-counsel claims). And Sanders' direct appeal did not dispose of any claims related to ineffective assistance of trial counsel. So the RCr 11.42 proceeding was the initial review proceeding for purposes of raising ineffective-assistance-of-trial-counsel claims.

### D.   Kentucky state courts do not provide a meaningful opportunity to raise ineffective-assistance-of-trial-counsel claims on direct appeal.

Sanders argued in his petition and reply that *Martinez–Trevino* applies to habeas cases in Kentucky. *See generally* R. 73 at 17, 99–104; *see also* R. 96 at 54–60. But he presents a stronger argument in his Rule 59(e) motion, citing to more contemporary cases that take into account recent developments in the Sixth Circuit. And, more importantly, the Sixth Circuit has recently decided that the *Martinez–Trevino* exception applies to Kentucky cases. *See Woolbright v. Crews*, No. 13-6115, 2015 WL 3939382, at *7 (6th Cir. June 29, 2015). Accordingly, Sanders satisfies the final element for excusing procedural default under *Martinez* and *Trevino* based on the ineffectiveness of his post-conviction counsel.

Sanders may now proceed to develop facts in support of his argument for why he has cause to excuse any procedural default of Claim 27(I). *See U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 508 (6th Cir. 2008) (stating that the "governing principle" in a motion to reconsider a prior order is whether the decision will prevent an injustice). But this does not mean that Sanders will prevail on his *Martinez–Trevino* argument. Rather, he has made only a preliminary showing that *Martinez–Trevino* applies to his case. He must still prove—after developing his factual support—that his post-conviction counsel was actually ineffective and that Claim 27(I) is substantial in order to excuse his procedural default. *See, e.g.*, *Woolbright*, 2015 WL 3939382, at *9 (remanding to district court to "first address

18

whether [the petitioner] can demonstrate (1) the absence or ineffective assistance of his post-conviction counsel and (2) the 'substantial' nature of his underlying IATC claims").   If Sanders successfully establishes cause, the Court will then assess whether he "can establish prejudice from the alleged ineffective assistance of trial counsel."  *Id.*

### III.   Sanders may introduce, and the Court may consider, new evidence on cause (through *Martinez–Trevino*) and prejudice and on the merits of Claim 27(I).

Rule 6(a) of the Habeas Rules empowers a court to authorize a habeas petitioner to conduct discovery under the Federal Rules of Civil Procedure when the habeas petitioner demonstrates "good cause."   Cases define "good cause" as where the court has reason to believe—based on specific allegations—that the petitioner could demonstrate that he is entitled to relief if the facts are fully developed.  *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief.").   As discussed above, Sanders' specific allegations allow him to proceed with evidentiary development.

Before courts may consider any new evidence introduced through discovery, however, petitioners normally must clear at least two obstacles.   The Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), for example, imposes strict requirements on the consideration of evidence not first developed in the state court.  *See* 28 U.S.C. § 2254(e)(2).   And where the state court decided a claim on the merits, the record on federal review is limited to the same evidence before the state court.  *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

Neither of these obstacles prevents Sanders from further evidentiary development of his argument under *Martinez–Trevino* to excuse the procedural default of Claim 27(I). AEDPA's limitations do not apply to the *Martinez–Trevino* argument because the new evidence would be offered to support Sanders' cause-and-prejudice argument, not his claim for relief on the merits of Claim 27(I).  *See, e.g.*, *Coleman v. Hardy*, 628 F.3d 314, 319 n.2 (7th Cir. 2010) ("We join the Third and Eleventh Circuits in finding that the requirements of 28 U.S.C. § 2254(e)(2)(A) do not have to be met in order for a court to hold an evidentiary hearing on whether the petitioner has met the . . . threshold  necessary to consider the merits of his procedurally defaulted claim."); *McSwain v. Davis*, 287 F. App'x 450, 462 (6th Cir. 2008) ("[Section] 2254(e)(2)'s use of the term 'claim' applies to a substantive request for the writ of habeas corpus rather than to an excuse for procedural default.").  And *Pinholster*'s limitations do not apply here because, in state court, there was no merits adjudication of the ineffective-assistance-of-post-conviction-counsel issue  or  the  merits  of  Claim  27(I). *McClellan v. Rapelje*, 703 F.3d 344, 351 (6th Cir. 2013) ("*Pinholster* only applies to limit consideration of additional evidence when the state court has previously decided the same merits issue later presented to the federal court.").  If, with the aid of new evidence, Sanders can excuse his procedural default under *Martinez–Trevino*, he may then proceed to the merits of Claim 27(I).

But before he can submit new evidence on the *merits* of Claim 27(I), Sanders must still overcome the limitations in § 2254(e)(2).  *See Holland v. Jackson*, 542 U.S. 649, 653 (2004).  This requirement applies to any new evidence, whether obtained through affidavits, discovery or an evidentiary hearing.  *Id.*; *see also Landrum v. Mitchell*, 625 F.3d 905, 923–24 (6th Cir. 2010).  To introduce evidence under § 2254(e)(2), Sanders must first show either

that (1) he was not at fault for failing to develop the factual basis of his claim in state court, or that (2) the exceptions to § 2254(e)(2) apply. *See Couch v. Booker*, 632 F.3d 241, 245 (6th Cir. 2011). Next, the record must not foreclose the possibility of habeas relief. *See Schriro*, 550 U.S. at 474.

Sanders would not be at fault for failing to develop the factual record if he exercised due diligence in developing and presenting that evidence. *Williams v. Taylor*, 529 U.S. 420, 434–35 (2000). The diligence inquiry depends upon whether Sanders "made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court." *Id.* at 435. A petitioner's diligence does not depend on whether he was successful in litigating his habeas claims in state court. *Id.*; *see also McFarland v. Yukins*, 356 F.3d 688, 712–13 (6th Cir. 2004) (holding that petitioner was "diligent" where he specifically sought an evidentiary hearing in his state petition for post-conviction relief and the petition was denied); *Greer v. Mitchell*, 264 F.3d 663, 681 (6th Cir. 2001) (same). Instead, "[a] petitioner is diligent when he requests, but is denied, an evidentiary hearing in state court." *Washington v. Renico*, 455 F.3d 722, 731 n.4 (6th Cir. 2006) (citing *McFarland*, 356 F.3d at 712).

Here, Sanders sought an evidentiary hearing on Claim 27(I) when he raised it in his motion for post-conviction relief and on his appeal to the Kentucky Supreme Court. *See* Motion to Vacate at 62, Appellate Proceeding at 562; Appellant's Brief at 100, *Sanders II*, 89 S.W.3d 380, Appellate Proceedings at 1260. That the Kentucky courts did not hold an evidentiary hearing is of no moment. Similarly, the absence of any affidavits or other extrinsic evidence with Sanders' RCr 11.42 motion is irrelevant because Kentucky law does not require such support. *See Mills v. Commonwealth*, 170 S.W.3d 310, 325 (Ky. 2005),

*overruled on other grounds by Leonard v. Commonwealth*, 279 S.W.3d 151 (Ky. 2009). Under Sixth Circuit precedent, Sanders' request for an evidentiary hearing on Claim 27(I) in state court establishes the diligence that will allow him to circumvent the restrictions of § 2254(e)(2). Because Sanders can overcome the limitations of § 2254(e)(2) on Claim 27(I), he may be entitled to an evidentiary hearing if he can excuse his procedural default. *See Townsend v. Sain*, 372 U.S. 293, 312 (1963), *overruled in part by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992); *Woolbright*, 2015 WL 3939382, at *9 (discussing how the "absence of factual development . . . nullifies a key advantage of bringing such [ineffective-assistance-of-trial-counsel] claims in collateral proceedings" and "hamstrings" courts' ability to adjudicate *Strickland* prejudice). If new evidence reveals that Sanders has not been diligent, however, the Court reserves the right to exclude evidence in its adjudication of the merits.

One last requirement remains. The Court need not conduct a hearing if the record otherwise contains evidence that forecloses relief for Sanders. *Schriro*, 550 U.S. at 474 ("It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."). At this stage, the record contains no facts that would foreclose habeas relief on Claim 27(I).

Before proceeding with full-fledged discovery, however, Sanders must submit sworn affidavits from the witnesses he identified in Claim 27(I) as having mitigation testimony. Rule 7 of the Habeas Rules permits the Court to expand the record by allowing the parties to file documents such as affidavits. Expanding the record may demonstrate that an evidentiary hearing is unnecessary. *See* 1976 Advisory Committee Notes to Rule 7 of the Habeas Rules ("Authorizing expansion of the record will, hopefully, eliminate some unnecessary hearings."). In this case, affidavits from the mitigation witnesses would assist the Court in

determining ineffectiveness and whether the absence of the potential testimony prejudiced Sanders, which is relevant to the *Martinez–Trevino* analysis, the prejudice prong of the cause-and-prejudice gateway and *Strickland* prejudice.  *See Clabourne v. Ryan*, 745 F.3d 362, 377 (9th Cir. 2014) (describing the overlapping nature of the *Martinez* and *Strickland* inquiries); *cf. Kafo v. United States*, 467 F.3d 1063, 1067 (7th Cir. 2006) (explaining the Seventh Circuit's rule in § 2255 cases that producing an affidavit is a threshold requirement for obtaining an evidentiary hearing).  Sanders must also file a brief explaining the relevance of the affidavits to the *Martinez–Trevino* analysis.  The Warden will have the opportunity to respond to Sanders' brief, as well as contest the veracity of the affidavits as permitted by Rule 7.  *See* Rule 7(c) of the Habeas Rules ("The judge must give the party against whom the additional materials are offered an opportunity to admit or deny their correctness.").

## CONCLUSION

Sanders' motion justifies reconsideration on two issues in his habeas petition:  (1) whether his post-conviction counsel was ineffective as to excuse procedural default of an ineffective-assistance-of-trial-counsel claim under *Martinez–Trevino*, and (2) whether he alleged facts that, if proven, would be sufficient to show that he is entitled to relief on the underlying claim.  So the Court reconsiders its prior opinion in part.  And because Sanders alleged specific facts that, if proven, would entitle him to relief, he may progress with discovery on these discrete issues.  In order to streamline the litigation, Sanders must first submit sworn affidavits from the potential mitigation witnesses that he identified in Claim 27(I).  The affidavits must describe the testimony those witnesses would have offered at the penalty phase of Sanders' trial.  The Warden may then respond to those submissions.  After

the Warden's response, the Court will determine if an evidentiary hearing or further discovery on Sanders' *Martinez–Trevino* argument and Claim 27(I) is warranted.

Accordingly, it is **ORDERED** that:

(1)     Sanders' motion for reconsideration under Federal Rule of Civil Procedure 59(e), R. 115, is **GRANTED IN PART** and **DENIED IN PART**.

(2)     The Court's previous judgment, R. 114, is **VACATED** as it applies to the resolution of Claim 27(I).

(3)     By **Monday, August 17, 2015**, Sanders **SHALL FILE** sworn affidavits from witnesses identified in Claim 27(I), detailing the mitigation testimony that they would have provided during the penalty phase.  By **Monday, August 17, 2015**, Sanders also **SHALL FILE** a brief explaining the relevance of the affidavits to his cause-and-prejudice argument.

(4)     By **Tuesday, September 8, 2015**, the Warden **SHALL RESPOND** to both the affidavits and Sanders' brief.

(5)     By **Tuesday, September 22, 2015**, Sanders may file a reply.

(6)     If the affidavits demonstrate the need for an evidentiary hearing on Sanders' cause-and-prejudice argument, the Court will inform the parties.  If Sanders establishes cause and prejudice for his procedural default on Claim 27(I), the Court will set a deadline to file a motion to expand the record or hold an evidentiary hearing on the merits of that claim.

(7)     Sanders' motion for a certificate of appealability, R. 120, is **DENIED WITHOUT PREJUDICE**.  *Cf. Jennings v. Stephens*, 135 S. Ct. 793, 802 (2015) ("Whether or not [28 U.S.C. § 2253(c)] embraces a cross-appeal, it

assuredly does not embrace the defense of a judgment on alternative grounds.").  Sanders may refile his certificate of appealability, if necessary, after resolution of the issues surrounding Claim 27(I).

This the 15th day of July, 2015.

Signed By:

*Amul R. Thapar*

**United States District Judge**