UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| DAVID LEE SANDERS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Civil No. 03-455-ART |
| v. | ) | |
| | ) | |
| RANDY WHITE, *Warden*, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Respondent. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

It is serious business to question the fairmindedness of another judge.  Almost thirty years ago, David Lee Sanders shot and killed two men execution-style.  A Kentucky jury later convicted him and sentenced him to death.  In a motion for post-conviction relief in state court, Sanders argued that his defense attorney provided ineffective assistance during the sentencing hearing when he failed to have Sanders's friends and family testify that Sanders was abused as a child.  The Kentucky Supreme Court ultimately rejected that claim on the merits, which means the Antiterrorism and Effective Death Penalty Act—more commonly known as AEDPA—applies to the claim.  *See* 28 U.S.C. § 2254.  The problem for Sanders is that, in his briefs before the Kentucky Supreme Court, he failed to state exactly what his friends and family would have said on the stand had they been called to testify.  Because of that failure, this Court has no basis on which to conclude that the justices of the Kentucky Supreme Court were being anything other than "fairminded" when they rejected Sanders's claim.  Under AEDPA, that means he is not entitled to habeas relief.

I.

The Court has previously summarized the facts of this case on two occasions.  *See* R. 128 at 2–4; R. 113 at 2–6.  The essential details related to the claims at issue here are as follows.  On January 28, 1987, Sanders shot and killed the owner and a customer of a convenience store in Madison County, Kentucky, and he took money from behind the counter.  When police initially questioned him about his activities on that day, Sanders admitted to driving to Madison County but maintained that he did not kill anyone.  On February 2, 1987, the police transported Sanders to the local jail.  There, Sanders manifested troubling behaviors:  He repeatedly hit his head against the cell wall and stated that he wanted to kill himself.  Sanders's appointed counsel, Ernie Lewis, videotaped Sanders's bizarre actions.  The next day, Sanders admitted to the murders in his interview with the police.  He explained that, during the murders, he could see himself shooting the men and was unable to stop himself.

Soon after Sanders confessed to the shootings, a grand jury indicted him on two charges of capital murder and two charges of first-degree robbery.  Sanders's retained counsel, Kevin Charters, moved to evaluate Sanders's mental health and psychiatric condition.  The trial court ordered the Kentucky Correctional Psychiatric Center ("KCPC") to evaluate Sanders.  As part of the evaluation, the trial court directed the KCPC to determine whether he was insane at the time he committed the shootings and whether he was competent to stand trial.  The KCPC conducted a series of tests and examinations over six weeks, employing multiple psychiatrists.  The lead KCPC investigator, Dr. Candace Walker, summarized the team's collective findings in a report.  The report concluded that, though

Sanders may suffer from a mixed-personality disorder, he did not suffer from a mental condition that compromised his capacity to conform his behavior to the law. The report also concluded that he was competent to stand trial. But the report did not include the findings of one KCPC psychologist, Dr. Frank Flenning, whose findings were inconsistent with those reported. In his individual report, Dr. Flenning documented the physical abuse Sanders experienced throughout his childhood at the hands of his parents. Dr. Flenning also concluded that Sanders experienced dissociative states, suffered from a fragmented personality, and had the potential for "brief psychotic episodes wherein he would experience a loss of contact with reality."

After his KCPC evaluation, Sanders went to trial and presented an insanity defense. At the conclusion of a week-long proceeding, the jury convicted Sanders of both murder counts and both robbery counts. After a weekend recess, the trial court conducted the penalty phase of the trial. Charters introduced mitigation testimony from the assistant principal of Sanders's former school, Sanders's neighbor, his boss, and his sister. After hearing this testimony, the jury deliberated and sentenced Sanders to death.

Sanders appealed the decision, but the Kentucky Supreme Court upheld the verdict. *See Sanders v. Commonwealth*, 801 S.W.2d 665 (Ky. 1990) (*Sanders I*). He then filed a motion for post-conviction relief under Kentucky Rule of Criminal Procedure ("RCr") 11.42. That, too, was denied. *See Sanders v. Commonwealth*, 89 S.W.3d 380 (Ky. 2002) (*Sanders II*). Sanders filed a petition for a writ of habeas corpus in this Court. Soon afterward, he obtained leave to present additional, unexhausted claims to the state court. R. 32. The Kentucky Supreme Court again denied relief, determining that Sanders could have presented

3

his latest batch of claims in his prior appeals.  *See Sanders v. Commonwealth*, 339 S.W.3d 427 (Ky. 2011) (*Sanders III*).  After his third and final trip to the Kentucky courts, Sanders withdrew some claims from his federal habeas petition.  When this Court denied relief on his amended petition, R. 113, Sanders filed a motion for reconsideration under Federal Rule of Civil Procedure 59.  The Court granted that motion with respect to one of Sanders's claims, Claim 27(I).  R. 128.

Initially, the Court held that Sanders had procedurally defaulted on that claim.  R. 128 at 5 (citing R. 113 at 12–13).  After reviewing the Kentucky Supreme Court's decision in more detail, however, the Court noticed that the state court seemed to have decided Claim 27(I) on the merits rather than on procedural grounds.  Accordingly, the Court asked the parties to file supplemental briefs addressing whether the Kentucky Supreme Court had indeed adjudicated Claim 27(I) on the merits.  R. 134.  After some back and forth, both parties ultimately agreed that Sanders had not procedurally defaulted his claim and that the Kentucky Supreme Court had adjudicated the claim on the merits.  R. 138; R. 139; R. 141. The Court therefore ordered the parties to brief the question whether Sanders could make the showing required under AEDPA, 28 U.S.C. § 2254.  The parties filed those briefs.  R. 143; R. 144; R. 146; R. 147.  The Court must therefore consider whether Sanders has satisfied AEDPA with respect to Claim 27(I).

## II.

In Claim 27(I), Sanders argues that his defense attorney provided constitutionally ineffective assistance when he failed "to investigate and prepare for [the] penalty phase" and failed "to present available mitigating evidence."  R. 10-2 at 61; R. 73 at 268.  Specifically,

he says that, during the sentencing hearing, counsel should have presented evidence that Sanders had been abused as a child and that Sanders had suffered numerous head injuries. R. 73 at 268. That evidence could have come from a variety of sources, Sanders says: his mother, brothers, grandparents, wife, relatives, and friends, as well as members of the clergy. *Id.* at 268–69.

Sanders made this argument before the Kentucky Supreme Court, R. 146-2 at 50–52, and the Kentucky Supreme Court rejected it on the merits. *Sanders II*, 89 S.W.3d 380, 390 (Ky. 2002). Despite initial disagreement, both parties now agree that the Kentucky Supreme Court's decision was a decision "on the merits" for the purposes of AEDPA. *See* R. 141 (answering "yes" to the question "does [the Warden] agree with Sanders that Claim 27(I) is not procedurally defaulted?"); R. 139 at 1 (agreeing that the Kentucky Supreme Court had reached the merits of Claim 27(I)). Because the state court adjudicated Claim 27(I) on the merits, this Court cannot grant habeas relief to Sanders unless he can satisfy AEDPA's gatekeeping requirements. *See* 28 U.S.C. § 2254(d).

When AEDPA applies to a claim, a federal court generally must deny habeas relief. 28 U.S.C. § 2254(d). There are only three exceptions to that rule. First, a federal court may grant habeas relief if the state court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding." *Id*. § 2254(d)(2). Alternatively, a federal court may grant habeas relief if the state court's adjudication "resulted in a decision that was contrary to . . . clearly established [f]ederal law, as determined by the Supreme Court of the United States[.]" *Id*. § 2254(d)(1). Finally, a federal court may grant habeas relief if the state court's adjudication

"resulted in a decision" that "involved an unreasonable application of . . . clearly established [f]ederal law, as determined by the Supreme Court of the United States." *Id.* If a prisoner cannot show at least one of those things, then a federal court must deny his habeas petition.

### A. Whether the Kentucky Supreme Court unreasonably determined the facts

Sanders first argues that the Kentucky Supreme Court unreasonably determined the facts. *See* R. 144-1 at 1; 28 U.S.C. § 2254(d)(2). Specifically, Sanders says that the state court did so when it said that Sanders did "not indicate what testimony [the unpresented family members] would have offered." R. 144-1 at 2 (citing *Sanders II*, 89 S.W.3d at 390). In Sanders's view, he indicated in his briefs what testimony the family members would have offered, and thus he says that the state court determined the facts unreasonably.

As an initial matter, this kind of determination—that a party has failed to provide enough detail in his brief—is not a determination of "fact" as that word is used in the AEDPA statute. True, "[i]n regard to § 2254(d), as in other contexts, the proper characterization of a question as one of fact or law is sometimes slippery." *Thompson v. Keohane*, 516 U.S. 99, 110-11 (1995). The reason is that almost *any* statement in a judicial opinion is in some sense a statement of fact. When a judge says that a case states a certain point of law, for example, he is in some sense asserting a fact: that the judges who decided the case *in fact* decided it in a certain way. When a judge says that he "disagrees" with an argument, he is likewise asserting a fact: the fact that he disagrees. The date, the docket number, the name of the court—all of these are factual assertions, but surely none of them are "determinations of the facts" as that phrase is used in 28 U.S.C. § 2254. The Court would not grant habeas relief just because a case was miscaptioned, for example, even

though that sort of thing does happen from time to time.  And so, with a few exceptions not relevant here,[1] a "fact" for habeas purposes means "what happened."  *Thompson*, 516 U.S. at 111.  That is, a factual issue is an issue about "basic, primary, or historical facts"—facts "in the sense of a recital of external events and the credibility of their narrators."  *Id.*  (quotation marks and citations omitted).  Whether a light was green or red, whether a death was caused by one act or another, whether a witness was lying or not lying:  These are fact questions.  They are questions about what happened out there in the world.  They turn on "a subsidiary finding of historical fact or an appraisal of witness credibility."  *McMullan v. Booker*, 761 F.3d 662, 671 (2014).  The question that the state court answered here—whether Sanders had been specific enough in his brief—is of course nothing like those questions.  It is probably best understood as a legal question—*i.e.*, whether Sanders presented enough facts to rebut the presumption that counsel provided effective assistance—or at the very least a mixed question of law and fact.[2]  It is certainly not a purely "factual" question for the purposes of the AEDPA statute.  When the state court answered that question, therefore, it did not "determin[e] the facts" at all, and thus likewise did not do so "unreasonabl[y]."  28 U.S.C. § 2254(d)(2).

Moreover, even if the Court were to classify the Kentucky Supreme Court's determination as a factual one, it was not unreasonable.  "As [the Supreme Court has]

---

[1] The Supreme Court has identified at least two kinds of "factual issues" that "extend[] beyond the determination of 'what happened.'"  *Thompson*, 516 U.S. at 464.  They are "competency to stand trial" and "juror impartiality."  *Id.*

[2] Courts answer questions like this all the time.  Sometimes these questions arise in procedural contexts, *e.g.*, when a court must decide whether a defendant has waived an argument.  Sometimes these questions arise in more substantive contexts, *e.g.*, when a court must decide whether a complaint states a claim upon which relief can be granted.  In none of these situations would we call these questions "factual" ones.  Each of them is a question of law.  The question here—whether Sanders provided enough facts to show that counsel was ineffective—falls on the substantive side.  But it nevertheless is not a factual conclusion.  *Cf. McMullan*, 761 F.3d at 671 (noting that "the effectiveness of counsel's assistance" is a "legal" issue rather than a "factual" one).

observed in related contexts, '[t]he term 'unreasonable' is no doubt difficult to define.'"
*Wood v. Allen*, 558 U.S. 290, 301 (2010) (citing *Williams v. Taylor*, 529 U.S. 362, 410
(2000)). Even so, the Supreme Court has made clear that "a state-court factual determination
is not unreasonable merely because the federal habeas court would have reached a different
conclusion in the first instance." *Id.* Instead, a habeas petitioner must show that the state
court's decision was objectively "unreasonable," which is a "substantially higher threshold."
*Schiro v. Landrigan*, 550 U.S. 465, 473, (2007). To do that, the petitioner needs to show that
a "reasonable factfinder must conclude" that the state court decision was wrong. *Rice v.
Collins*, 546 U.S. 333, 341 (2006).[3]

    In his brief before the Kentucky Supreme Court, Sanders provided very little
information about what his friends and family would have said during the sentencing hearing
if counsel had called them to the stand. Indeed, he provided only two sentences of detail
about their hypothetical testimony. In the first sentence, he said that his family members
"could have provided information and testimony relevant as mitigation, including
corroborated [sic] David [sic] statements of physical abuse." R. 146-1 at 51. In the second
sentence, he said that friends and clergy "could relay information relevant to mitigation in
the penalty phase of the trial." *Id.* That is all the detail he provided. He attached no
affidavits. He provided no summary of potential testimony. He did not even identify which
friends and family he thinks would have testified. A "reasonable mind" could therefore

---

[3] The Sixth Circuit has framed the standard as follows: the federal court "must be convinced that an appellate panel,
applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by
the record." *McMullan*, 761 F.3d at 672. This appears to be merely a different phrasing of the standard that the
Supreme Court laid down in *Rice*.

agree with the Kentucky Supreme Court that Sanders had failed to "indicate what testimony [the unpresented family members] would have offered." *Sanders*, 89 S.W.3d at 390.

Sanders responds in two ways.  First, he says that when he mentioned "physical abuse," that passing reference was enough to indicate what testimony the witnesses would have offered.  This counterargument nicely highlights the problem with treating the Kentucky Supreme Court's determination as a factual one.   Yes, Sanders did mention that the witnesses would have said something about "physical abuse."  So Sanders did, in some sense, indicate what testimony the family members would have offered—at least at a very high level of generality.  As explained above, however, what the Kentucky Supreme Court seems to have been saying is that Sanders was not specific enough about what the witnesses' testimony would have been—and thus provided no basis on which the court could call defense counsel's performance constitutionally deficient.   That of course is a legal conclusion rather than a purely factual determination.   In any event, given the scant detail Sanders provided in his briefs, a "reasonable factfinder" could believe that he failed to indicate what testimony those family members would have offered.  *Rice*, 546 U.S. at 334. After all, he didn't even say which family members would have testified.  So this argument fails.

Second, Sanders argues that the Kentucky Supreme Court's decision was based on an unreasonable determination of the facts because the court failed to give him an evidentiary hearing.  R. 144-1 at 4 (arguing that Sanders "was thus entitled to a hearing based on the allegations he had made, and the failure to have provided that hearing . . . renders any factual findings to have been based on an unreasonable determination of the facts").  That argument

would be a more compelling one if the Kentucky Supreme Court had said that "Sanders was never abused" or that "none of his family members would have testified that he had been abused." But that is not what the state court said. Instead, the court said that Sanders failed to explain what his relatives would have testified to during his mitigation hearing. This is not a statement about "what happened" out in the world. This is a statement about the contents of Sanders's brief. An evidentiary hearing would not have changed the contents of Sanders's brief.[4]

In this way, Sanders's situation is very different from the one at issue in *Brumfield v. Cain*, 135 S. Ct. 2269 (2015), a case that Sanders cites in support of his argument. There, a state rule gave a capital defendant the right to an evidentiary hearing only if he could "raise a 'reasonable doubt' as to [his] intellectual disability." *Brumfield*, 136 S. Ct. at 2276. The state court determined that the defendant failed to raise a reasonable doubt, and the Supreme Court held that the state court's determination was unreasonable. *Id.* at 2277–82. Here, by contrast, no Kentucky rule gives an inmate the right to an evidentiary hearing in order to develop an ineffective-assistance claim that the defendant pled skeletally in his brief. Thus, nothing in *Brumfield* suggests that the state courts unreasonably determined the facts when

---

[4] It is possible that Sanders's real argument is that the factual finding is unreasonable *because* the state court did not hold an evidentiary hearing. That is, he might be saying that it was unreasonable for the Kentucky Supreme Court to find—without first holding an evidentiary hearing—that he had failed to "indicate what testimony [the unpresented family members] would have offered." R. 144-1 at 2. But "AEDPA does not make deference to state court fact-finding dependent on the adequacy of the procedures followed by the state court." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). So long as the ultimate factual determination was reasonable—which it was here—a petitioner cannot satisfy AEDPA merely by quibbling with the process used to reach that determination.

they failed to grant Sanders an evidentiary hearing.  Sanders has therefore failed to make the showing required under 28 U.S.C. § 2254(d)(2).[5]

### B.  Whether the Kentucky Supreme Court's decision was "contrary to" clearly established precedent from the United States Supreme Court

Sanders next argues that, when the Kentucky Supreme Court rejected Claim 27(I), it rendered a decision "contrary to" clearly established precedent from the United States Supreme Court.  R. 144-1 at 7; *see* 28 U.S.C. § 2254(d)(1).  There are two ways in which a state-court decision can be "contrary to [the Supreme Court's] clearly established precedent." *Williams*, 529 U.S. 362 at 405.  The first is if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Supreme Court's] precedent."  *Id.* at 406.  Not even Sanders argues that the facts of his case are materially indistinguishable from any Supreme Court case.  So he turns to the second way.

A state-court decision can also be "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases."  *Id.*  For example, *Strickland* makes clear that a prisoner can show prejudice (from ineffective assistance of counsel) by showing a "reasonable probability" that the result of the proceeding would have been different but for his attorney's errors. *Strickland*, 466 U.S. 668, 694 (1984).  Thus, "[i]f a state court were to reject a prisoner's claim of ineffective assistance of counsel on the grounds that the prisoner had not established by a preponderance of the evidence that the result of his criminal proceeding would have

---

[5] Alternatively, Sanders might be arguing that the Kentucky Supreme Court violated state law when it failed to grant him an evidentiary hearing.  But a prisoner is not entitled to habeas relief just because the state courts misapplied state law.  *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983).  So to extent that is Sanders's true argument, the Court need not address it.

been different, that decision would be 'diametrically different,' 'opposite in character or nature,' and 'mutually opposed' to [the Supreme Court's] clearly established precedent[.]" *Williams*, 529 U.S. at 405–06. And thus the state court would have rendered a decision "contrary to" Supreme Court precedent. To render a decision "contrary to" Supreme Court precedent, therefore, the state court must depart from a rule that Supreme Court precedent has clearly established.

Here, Sanders raised an ineffective-assistance-of-counsel claim before the Kentucky Supreme Court. The "governing law" was therefore *Strickland*. Is that the law that the Kentucky Supreme Court applied? Indeed it was. The Kentucky Supreme Court cited *Strickland*, articulated the rule laid down in *Strickland*, and ultimately applied *Strickland*. *See Sanders II*, 89 S.W.3d at 390. Thus, the Kentucky Supreme Court did not "appl[y] a rule that contradicts the governing law set forth in [the Supreme Court's] cases." *Williams*, 529 U.S. at 405. On the contrary, it applied the right rule and did so explicitly.

Moreover, the Supreme Court has made clear that cases like this one do not implicate the "contrary to" clause of § 2254. "Assume, for example," the Supreme Court said in *Williams*, "that a state-court decision on a prisoner's ineffective-assistance claim correctly identifies *Strickland* as the controlling legal authority and, applying that framework, rejects the prisoner's claim. Quite clearly, the state-court decision would be in accord with our decision in *Strickland* as to the legal prerequisites for establishing an ineffective-assistance claim." *Williams*, 529 U.S. at 406. Thus, the Court held, the state court's decision in such a case would not be "contrary to" Supreme Court precedent. *Id.* This is such a case.

Sanders responds that, in addition to applying the general rule laid down in *Strickland*, the Kentucky Supreme Court also should have applied the more specific rules laid down in the U.S. Supreme Court's later ineffective-assistance cases—specifically, *Porter*, *Van Hook*, *Wiggins*, and *Sears*. *See Porter v. McCollom*, 558 U.S. 30, 39 (2009); *Bobby v. Van Hook*, 558 U.S. 4, 7–8 (2009); *Wiggins v. Smith*, 539 U.S. 510, 524 (2003); *Sears v. Upton*, 561 U.S. 945, 954–56 (2010). In Sanders's view, those cases make clear that "the decision to forego any type of mitigation is automatically unreasonable if counsel did not first conduct a reasonable investigation, because without investigation, it is impossible to make a fully informed strategic decision." R. 144-1 at 8. When the Kentucky Supreme Court "failed to apply this governing rule," the argument seems to go, the state court rendered a decision "contrary to" Supreme Court precedent. *Id.*

There are several problems with this argument. One is rather fundamental. When the Kentucky Supreme Court decided Sanders's case, the United States Supreme Court had not yet decided the cases that Sanders now cites. As is evident from the captions above, *Porter* and *Van Hook* were decided in 2009, *Wiggins* in 2003, and *Sears* in 2010. To be "clearly established" federal law, the law must be "established" in the first place at the time that the state court made its decision. *See, e.g.*, *Greene v. Fisher*, 132 S. Ct. 38, 44 (2011). The "governing law" that Sanders points to was not yet established when the Kentucky Supreme Court rejected Claim 27(I) in 2002. Thus, the Kentucky Supreme Court's decision could not have been "contrary to" any of those cases.[6]

---

[6] Sanders also cites *Claudy* and *Carter*, two cases that the United States Supreme Court decided before 2002. *See Pennsylvania v. Claudy*, 350 U.S. 116 (1956); *Carter v. Texas*, 177 U.S. 442 (1900). Those are not *Strickland* cases at all—indeed, they were decided before *Strickland*—so the Kentucky Supreme Court's decision was not contrary to them.

There is another problem with Sanders's argument.[7]  Sometimes the Supreme Court states rules at varying levels of generality over the course of several cases in the same line.  *See Drummond v. Houk*, 797 F.3d 400, 403 (6th Cir. 2015) (recognizing this fact).  For example, the Court laid down a general rule in *Strickland* that counsel must provide "reasonably effective assistance."  *Strickland*, 466 U.S. at 687.  In later cases—such as the ones that Sanders cites—the Court has defined what that general rule means in more specific factual contexts.  But so long as the state court cites and applies the general rule—*Strickland*—the state court's failure to discuss explicitly the Court's more specific rules does not mean that the state court has issued a decision "opposite in character or nature" to established Supreme Court precedent.  *Williams*, 529 U.S. at 405.  Far from it: by applying the more general *Strickland* standard, the state court ensured that it was sufficiently in the ballpark of established Supreme Court precedent and thus avoided making a ruling "contrary to" that precedent.

Consider the following example.  Assume the Supreme Court laid down a general rule that all birds must be kept in a cage.  And assume the Court later laid down a more specific rule that, if the bird is an eagle, then it must be kept in an *iron* cage.  If a state-court opinion said "all eagles must be kept in gold cages," that opinion would indeed be "contrary to" the

---

[7] The fact that Sanders cites only cases that post-date the Kentucky Supreme Court decision should be the end of the matter.  It is up to the petitioner—not the Court—to identify which Supreme Court cases the state court's decision contradicts.  Even so, he does make a passing reference to the Supreme Court's decision in *Williams*, which was decided in 2000.  And meanwhile some of the cases he cites—in particular *Wiggins* and *Porter*—cite to *Williams* as well.  Since this is a death penalty case, the Court will assume that Sanders wishes to argue that the state court's decision was contrary to *Williams* as well—or perhaps that he wishes to argue that these later cases are "illustrative" of the proper application of *Strickland*.  *See Wiggins*, 539 U.S. at 522 (holding that the opinion in *Williams* was "illustrative of the proper application of [*Strickland*].").  And thus the Court will explain why the state court's decision is not "contrary to" any of the cases that Sanders cites, regardless of whether they were decided before or after the Kentucky Supreme Court's decision.

Supreme Court's governing law. *See id.* For these two rules (if eagle, then iron cage; if eagle, then gold cage) are "diametrically different" from one another. *Id.* But what if the state-court opinion said only that "all eagles must be kept in cages?" True, such an opinion could have been more specific—the state court could have just skipped straight to iron cages. But it would be impossible to say that the state court had "contradict[ed]" the Supreme Court's established precedent. *Id.*

So too here. The state court could have discussed the Supreme Court's more specific ineffective-assistance cases, but since those cases are merely applications of *Strickland*, the state court did not "contradict" any Supreme Court case by citing *Strickland* alone. For the purposes of AEDPA's "contrary to" clause, talking about *Strickland* itself is enough. In sum, Sanders has failed to show that the state court's adjudication of his claim "resulted in a decision that was contrary to . . . clearly established law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

### C. Whether the Kentucky Supreme Court unreasonably applied precedent from the United States Supreme Court

### 1. Standard of review

As an initial matter, the parties dispute the standard of review that the Court should apply. Claim 27(I) is of course a *Strickland* claim, and *Strickland* claims have two components: deficient performance and prejudice. 466 U.S. at 687. Under Sixth Circuit case law, "[w]hen a state court relied only on one *Strickland* prong to adjudicate an ineffective assistance of counsel claim, AEDPA deference does not apply to review of the *Strickland* prong not relied upon by the state court. The unadjudicated prong is reviewed de novo." *Rayner v. Mills*, 685 F.3d 631, 638 (6th Cir. 2012); *see also Porter*, 130 S. Ct. 447, 452

(2009) ("Because the state court did not decide whether Porter's counsel was deficient, we review this element of Porter's *Strickland* claim [de novo].").  In Sanders's view, the Kentucky Supreme Court rejected Claim 27(I) on deficient-performance grounds alone and did not reach the prejudice prong.  *See* R. 144-1 at 14.  Thus, Sanders concludes, the Court should apply AEDPA deference only to the state court's determination of the performance prong and should review the prejudice prong de novo.  *Id.* at 11.

The problem with that argument is that the true basis of the Kentucky Supreme Court's decision is hard to discern.  Yes, the court did say that "[t]he decision as to whether or not to call family members as mitigation witnesses is a strategic one which will not be second-guessed by hindsight."  *Sanders II*, 89 S.W.3d at 390–91 (citing *Fretwell v. Norris*, 133 F.3d 621 (8th Cir. 1998)).  But that sentence states a legal *rule* rather than a legal *conclusion*.  And nowhere did the state court flatly state that Sanders had failed to show deficient performance.  Moreover, a court is of course at liberty to reject a *Strickland* claim on both performance *and* prejudice grounds—it is not as if a court must stop the analysis after determining that a defendant has failed to show deficient performance.  And the state-court opinion suggests that the Kentucky Supreme Court might have done just that here.  After all, the state court said that "[t]he burden is on Sanders to give specific facts to establish ineffective assistance of counsel claims, both as to unreasonable performance *and* prejudice," *id.* (emphasis added), before going on to reject Claim 27(I) without identifying which half of Sanders's burden he had failed to meet.

What is a federal court to do in a situation like this, in which the state court undisputedly rejected a *Strickland* claim on the merits, but nowhere specified the specific

reasoning?  The nearest analogue seems to be the Supreme Court's opinion in *Harrington v. Richter*, 562 U.S. 86 (2011).  There, the California Supreme Court rejected the petitioner's *Strickland* claim on the merits but failed to provide any reasoning at all.  The Supreme Court ruled that in such situations, when "a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.  This is so whether or not the state court reveals which of the elements of a multipart claim it found insufficient, for § 2254(d) applies when a 'claim,' not a component of one, has been adjudicated."  *Harrington*, 562 U.S. at 98; *see also Johnson v. Williams*, 133 S. Ct. 1088, 1094 (2013) ("Although *Richter* itself concerned a state-court order that did not address *any* of the defendant's claims, we see no reason why the *Richter* presumption should not also apply when a state-court opinion addresses some but not all of a defendant's claims.").

It is true, of course, that the state court decision in *Harrington* was far more skeletal than the one here.  The California Supreme Court there rejected the claim in a single sentence; the Kentucky Supreme Court here rejected it over several paragraphs.  Even so, as in *Harrington*, so too here:  It is simply impossible for the Court to divine the true basis of the state court's decision—whether the state court rejected the claim on performance grounds, on prejudice grounds, or perhaps on both grounds.  And in situations like that, *Harrington*—rather than *Porter*—seems to provide the relevant rule.  After all, it is clear that the Court must apply AEDPA deference to at least one of the *Strickland* prongs.  This is because the state court adjudicated Sanders's claim "on the merits," thus triggering the AEDPA statute.  And if the Court cannot figure out which prong the state court adjudicated,

17

then it cannot know which prong gets the deference and which prong gets the de novo review.  The only remaining option is to apply the presumption from *Harrington*.  Thus, the Court will apply AEDPA deference to both prongs of Sanders's ineffective-assistance claim.

### 2. Deficient performance

"Even [on direct] review, the standard for judging counsel's representation is a most deferential one." *Harrington*, 562 U.S. at 105.  The question under *Strickland* is not whether Sanders's defense attorney "deviated from best practices or most common custom," but whether his "representation amounted to incompetence under 'prevailing professional norms.'"  *Id.* (citing *Strickland*, 466 U.S. at 690).  "On habeas review the standard is more deferential still."  *Davis v. Carpenter*, 798 F.3d 468, 473 (6th Cir. 2015).  Given that Sanders raised this claim before the Kentucky Supreme Court—which rejected it on the merits—the question here is whether any "fairminded jurist" could agree with the state court that counsel satisfied the reasonableness standard set forth in *Strickland*.  *Harrington*, 562 U.S. at 101.  "That standard is a general one, governing a great blue-water of attorney conduct: from pre-trial discovery to plea-bargaining, from in-court trial tactics to post-verdict motions, from direct appeals to post-conviction challenges.  The Supreme Court has charted only parts of that expanse."  *Davis*, 798 F.3d at 473.  The Supreme Court's *Strickland* cases "serve as navigation buoys, marking the points on which courts have foundered in the past—and thus should not approach again."  *Id.* "If a defendant shows that his attorney failed to tell him about a potential plea deal, for example, then a state court should know [because of the Supreme Court's holding in *Missouri v. Frye*, 132 S. Ct. 1399 (2012)] that it cannot hold that

counsel's performance was reasonable nonetheless . . . . And if a state court were to take that course anyway, we would say that no fairminded jurist would have done the same." *Id.*

"But here the [Kentucky] courts found themselves in open water." *Id.* In 2002, "[t]he Supreme Court ha[d] never reached the specific question[]," *id.*, that the Kentucky Supreme Court answered in this case: namely what kinds of evidence the Constitution requires a defense attorney to present during a sentencing hearing.[8] Thus, when the Kentucky Supreme Court was adjudicating Sanders's claim, "[t]he only buoy in sight, far off on the horizon, was the Court's guidance in *Strickland* itself that counsel's efforts must be within 'the wide range of reasonable professional assistance[.]'" *Id.* (citing *Strickland*, 466 U.S. at 689).

That rule is "as general as they come." *Id.* And "[t]he more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). For "[a]pplying a general standard to a specific case can demand a substantial element of judgment." *Id.* The question is therefore whether there is "any reasonable argument" that Sanders failed to show deficient performance, *i.e.*, that defense counsel provided ineffective assistance when he failed to have family and friends testify during Sanders's sentencing hearing. *Harrington*, 562 U.S. at 89.

There are two such arguments here. First, Sanders's brief in the Kentucky Supreme Court contained very little detail. As discussed above, Sanders provided hardly any information in his brief about what his friends and family members would have said if called. He said only that family members "could have provided information and testimony relevant

---

[8] Sanders cites several Supreme Court decisions that define in greater detail just what a defense attorney must do during a death-penalty sentencing hearing. In particular, he points out that the Supreme Court held in *Wiggins* that "a reviewing court must consider the reasonableness of the [defense counsel's] investigation said to support [a given sentencing] strategy." *Wiggins*, 539 U.S. at 527. But *Wiggins* was not decided until 2003. Thus, the Kentucky Supreme Court did not have the benefit of that case's guidance when it adjudicated Sanders's claim in 2002.

as mitigation, including corroborated [sic] David [sic] statements of physical abuse," and that friends and clergy "could relay information relevant to mitigation in the penalty phase of the trial." R. 146-1 at 51. Provided with so few details, it would have been difficult for the Kentucky Supreme Court to label "professionally unreasonable" defense counsel's decision not to call Sanders's friends and family. And it would certainly be impossible for this Court to characterize the state court's refusal to apply that label as something that no fairminded jurist would do. *Harrington*, 562 U.S. at 98.

Second, there is at least a "reasonable argument" that Sanders's friends and family would have provided only cumulative testimony. Some federal circuit courts have held that a defense attorney need not present cumulative evidence, and the judges in those circuit courts are presumably fairminded ones. *See, e.g.*, *Van Poyck v. Florida Dep't of Corrections*, 290 F.3d 1318, 1324 (11th Cir. 2002). Here, Sanders did testify—albeit during the guilt phase—that his parents had abused him: that his father was an alcoholic, that his mother hit him in the head with a piece of firewood, that his father would call him names, that his parents never told him that they loved him before he was arrested, and that his father hit him with tobacco sticks, water hoses, and pieces of fan belt. Video Record, June 4, 1987, 14:13-14:19. Given the scant details that Sanders provided in his brief—and especially given that Sanders said that friends and family would have "corroborated" what he testified to, R. 146-1 at 2—it is entirely possible that the testimony would have been cumulative. And thus a fairminded jurist could hold that counsel provided constitutionally adequate assistance here.

None of this is to say that defense counsel did a good job, of course.  If the allegations made in Sanders's habeas briefs are true—unsupported as they were by any affidavits—then it seems like defense counsel provided very poor assistance.  Counsel put on fewer than ten minutes of mitigation evidence, and even that evidence was not very helpful to Sanders's defense.  *See* Video Record, June 8, 1987, 9:13-9:21.  But AEDPA is an unusual law.  It contemplates that a federal judge might realize that a prisoner's constitutional rights have been violated but nevertheless forbids the judge from granting habeas relief based on that realization alone.  *See Williams*, 529 U.S. at 412 (O'Connor, J., concurring) (noting that AEDPA has modified "the role of federal habeas courts in reviewing petitions filed by state prisoners" by placing "a new constraint [§ 2254(d)] on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus[.]").  Instead, AEDPA requires the prisoner to show that the state-court process itself was defective, and defective in one specific way: inconsistent with a United States Supreme Court decision in a way that no fairminded jurist could overlook.  Given the scant record before the state court here, this Court has no way of saying that the state court's decision was defective in that way.

### 3. Prejudice

To prevail on an ineffective-assistance claim, a defendant must also show prejudice. That means he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  In this context, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*

That is the standard on direct review.  When AEDPA applies to a claim, however, the prisoner must show more than simple prejudice.  He must show that all fairminded jurists would hold that he was prejudiced.  The question presented then is whether any fairminded jurist could reject the idea that, if defense counsel had called Sanders's friends and family to the stand, there would have been a reasonable probability that the jury would have given Sanders a sentence other than death.

A fairminded jurist could certainly reject that notion.  Sanders admitted that he had killed two men execution-style.  He showed little remorse during his sentencing hearing, testifying that "in a way I'm guilty; in a way I'm not guilty."  Video Record, June 8, 1987, 9:28.  He blamed the psychiatric hospital for failing to help him.  *Id.* at 9:29.  And he never apologized for his crimes.  *Id.*  Moreover, Sanders had already testified that he had been abused as a child.  Video Record, June 4, 1987, 14:13-14:19.  And his brief before the Kentucky Supreme Court failed to specify exactly what his family and friends would have said if called to the stand to supplement his testimony.  R. 146-1 at 51.  Given this record, a fairminded jurist could hold that Sanders had failed to show that the presence of this additional mitigation evidence would have changed the outcome.

In sum, when the state court rejects an ineffective-assistance claim on the merits, but fails to specify whether it did so on performance or prejudice grounds, the federal habeas court must consider whether a fairminded jurist could reject the claim on either performance or prejudice grounds.  Given the record presented to the Kentucky Supreme Court, a fairminded jurist could hold that Sanders failed to show deficient performance.  And a fairminded jurist could likewise hold that he failed to show prejudice.  For both of those

reasons, Sanders has failed to show that, when the Kentucky Supreme Court rejected his claim, the state court unreasonably applied any holding of the United States Supreme Court.

### Conclusion

Sanders has failed to show that, when the Kentucky Supreme Court rejected Claim 27(I), the court rendered a "decision that was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding." 28 U.S.C. § 2254(d)(2). Nor has he shown that the Kentucky Supreme Court's decision "was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). This Court therefore cannot grant him habeas relief. 28 U.S.C. § 2254(d). That said, "reasonable jurists could debate" the Court's ruling, which means Sanders is entitled to a certificate of appealability. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

Accordingly, it is **ORDERED** as follows:

(1) Sanders's petition for a writ of habeas corpus with respect to Claim 27(I) is **DENIED**.

(2) Sanders's motion to alter or amend judgment with respect to Claim 27(I), R. 115, is **DENIED**.

(3) Sanders's application for a certificate of appealability with respect to Claim 27(I),

   R. 116, is **GRANTED**.

This the 21st day of June, 2016.

Signed By:

*Amul R. Thapar*

United States District Judge